Charles P. Tatt v. Commissioner.
Tatt v. Commissioner
Docket No. 10079.
United States Tax Court
1947 Tax Ct. Memo LEXIS 119; 6 T.C.M. (CCH) 906; T.C.M. (RIA) 47218; July 31, 1947
*119 Chester Bedell, Esq., 315 Realty Bldg., Jacksonville, Fla., Joseph Hartman, Esq., 309 West Bldg., Jacksonville, Fla., and Joseph M. Glickstein, Esq., 9 N. Ocean St., Jacksonville, Fla., for the petitioner. Bernard D. Hathcock, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: Respondent determined deficiencies in petitioner's income tax for the taxable year 1941 and for the taxable years 1942 and 1943 in the respective amounts of $246.24 and $68,075.78. There is only one amount for the two years 1942 and 1943 by virtue of the so-called forgiveness feature applicable to those years. At the hearing petitioner abandoned certain issues. The remaining question is whether respondent properly disallowed as deductions certain farm losses. Returns were filed with the collector of internal revenue at Jacksonville, Florida. Findings of Fact Petitioner was born in Roumania. Petitioner's father was a farmer and petitioner lived and worked on his father's farm for approximately 15 years. In 1910 petitioner came to the United States. He was then 17 years old. For the first two years he was in this country he worked on a dairy and truck farm *120 in Rhode Island. In 1919 he went to Jacksonville, Florida, and entered the produce business. He is still in this business. In 1932 petitioner bought 20 acres of land in Mandarin about 17 miles from Jacksonville. The purchase price was $3,500. The land was unimproved and was covered with pines and palmettos. Petitioner bought the land with the idea of farming it in conjunction with his produce business. He started having the land cleared in 1933 and had a log cabin built on the land at a cost of $800. Petitioner and his wife moved into the cabin in September 1934. In 1935 he built a large house which cost him from $4,000 to $5,000. Petitioner has two children who were born, respectively, in 1936 and 1938. From 1934 to 1937, inclusive, petitioner attempted to raise poultry on the farm. He invested about $6,000 or $7,000 in buildings and equipment. He had built 14 chicken houses. By 1936 he had 4,200 chickens. He sold eggs and fryers but kept the pullets for laying. He had as many as six employees working on the farm at one time. The poultry venture was unsuccessful due to low market conditions, inefficient labor and high mortality among the chickens. After 1937 petitioner sold out *121 most of his chickens but retained and continues to keep poultry on a limited scale on his farm. Petitioner has a special strain of chickens on his farm which he does not sell. He is holding this strain in case he goes back into the poultry business. From 1938 to 1940, inclusive, petitioner tried raising truck on his farm. He raised tomatoes, potatoes, corn, egg plant, watermelons, beans and other such produce but was not successful in making any profit from the truck farming. Some of the produce raised went to feed the poultry and animals on the farm. Petitioner and his family consumed some of it, the remainder was sold if possible. The market for the truck crops was confined to the locality in which they were grown because similar crops from all southeastern States come on about the same time and local crops were not sufficient for car load shipments to western markets. As a consequence the local markets were over stocked and sales, when possible, were at prices too low for profitable production. In 1936 and 1937 petitioner planted 800 citrus trees, orange, tangerine and grapefruit. Due largely to frost petitioner has only 250 of these trees left. He has sold citrus fruit from *122 these trees from time to time direct to customers but has not made any profit. Petitioner's fruit was not packed by a packing house and State law prohibits sale of such fruit except direct to customers. After 1940 petitioner tried dairy farming. The farm was turned into pasture. In 1941 petitioner had three cows, a bull, a horse as well as some mules. The dairy farming seemed as though it might become financially successful and then the war came and petitioner was unable to get proper help. Petitioner made no profit from his dairy farm. During 1941, 1942 and 1943, petitioner had a colored man working for him on the farm who commuted from Jacksonville. Petitioner's produce business, which is conducted from offices in Jacksonville, leaves petitioner only early mornings, evenings and weekends to attend to his farm. Petitioner's returns for 1941 to 1943, inclusive, showed net income in the following respective amounts, $7,268.24, $33,280.99 and $82,798.92. For these same years petitioner claimed deductions for farm losses in the respective amounts of $1,369.10, $2,566.72 and $3,766.65. According to these returns the only receipts derived from the farm in 1941 were $307.85 for turkeys *123 and $130 for a horse, one cow and two calves. As against receipts, farm expenses were reported in the amount of $1,800.95. For 1942 petitioner reported as receipts from farm operations $330.71 from the sale of fowls, pigs and a mule. As against this, expenses of $2,897.43 were reported. For 1943 petitioner reported receipts from farm operations in the amount of $1,139.02 from the sale of poultry, eggs and vegetables. Against this, expenses were reported in the amount of $4,905.67. Petitioner has taken loss deductions on account of his farm operations almost every year since his acquisition of it. These deductions were first questioned by respondent for the years before us. During the years 1941 to 1943, inclusive, petitioner did not operate the farm as a trade or business or for profit. Opinion The question is whether respondent properly disallowed certain farm losses as deductions. This depends on whether or not petitioner operated the farm as a trade or business or for profit during the years before us. We have concluded that he did not. The determination of whether a farm is operated for profit or for personal reasons is a difficult one involving, as it does, elements of *124 intent and degree. Each case must turn on its own facts and precedents are therefore of limited aid. Certain considerations may be determinative in one case and not in another. With these observations in mind we will discuss the considerations underlying our conclusions here. By the commencement of the taxable period here involved petitioner had owned the farm approximately nine years. He has never made or reported a profit on the farm operations. He has almost invariably reported a loss. He devotes relatively little personal attention to the farm. During the years in question he had only one regular man working on the farm. Petitioner's livelihood was derived from business activities in Jacksonville. His income from these activities was substantial. The receipts from the farm as set out in the facts were relatively small as compared to the expenses. The farm was also a residence and was conveniently located for commuting to Jacksonville. Considering all these circumstances we have concluded that during the years before us petitioner did not operate the farm as a trade or business or for profit. During some of the period prior to the years involved we think petitioner did operate *125 the farm for profit but we think that by the time of the taxable years before us this original purpose was, at least, temporarily abandoned. Petitioner undoubtedly has a vague hope that at some future time he may be able to derive a profit from his farm, but during the years before us we are convinced that petitioner had no current intention or hope of making a profit. On direct examination, when asked why he continued the operation of the farm, he answered, "Some future day, when I can give it my full attention, I believe that I can make it." When asked why he thought so, he said: "Because if I was there to see that the work was done properly and if I could get the proper workmen, I believe I could make it, because I could raise some of these vegetables in the late fall, early fall, and make a profit." From this and other considerations, it seems to us that during the years here involved petitioner in effect had a country place where he resided and indulged his farming instincts for pleasure regardless of the expense, with a vague hope and belief that at some future time, perhaps when he retired from or curtailed his profitable business in Jacksonville, the farm could be made *126 to pay. This interpretation of the situation seems consistent with the continued operation at a loss, the disproportionate relationship between disbursements and receipts, and the somewhat curtailed operations conducted on the farm during this period. Petitioner testified, it is true, that during the taxable years here in question he operated the farm with the intention of making a profit. This testimony, however, must be interpreted against the background of the entire situation. So interpreted this testimony, in our opinion, does not preclude our conclusion that petitioner's profit motive during the taxable years was related to some undetermined future time when different conditions should prevail and was based on a vague future hope. For these reasons, having carefully considered the entire record, we have found that petitioner did not operate the farm as a trade or business or for profit during the period in question. It follows and we hold that respondent properly disallowed the losses claimed. Decision will be entered for respondent.